**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GARY JACQUES, | Civil Action |
| Petitioner, | No. 20-1559 (CPO) |
| v. | |
| WARDEN DAVID ORTIZ, | **OPINION** |
| Respondent. | |

**O'HEARN, District Judge.**

Petitioner is a federal prisoner, and he is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Respondent filed an Answer opposing relief (ECF No. 6), and Petitioner filed a Reply, (ECF No. 7). For the reasons set forth below, the Court will deny the Petition.

**I.     BACKGROUND**

This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Danbury, in Danbury, Connecticut.[1] On May 21, 2019, staff issued an incident report charging Petitioner with assaulting any person, in violation of Bureau of Prisons ("BOP") Disciplinary Code 224.[2] (ECF No. 6-3, at 14.) The report describes the incident as follows:

> After completing an SIS investigation, the following was concluded. It is the conclusion of this investigator, there is sufficient evidence to indicate inmates Jacques, Gary, Reg. No. 64673-053; Feliz, Yoelfi, Reg. No. 15839-049; and Serrano Ayuso, Jose, Reg. 15488-049, assaulted inmate Johnson, Joshua, Reg. 29746-280, on April 24, 2019 at approximately 7:40 a.m. in unit G-A. Specifically,

---

[1] It appears that the underlying events of this case occurred at FCI Danbury, but Petitioner did not file the instant Petition until after his transfer to FCI Fort Dix, in Fort Dix, New Jersey.

[2] BOP Code 224 prohibits: "Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate)." 28 C.F.R. § 541.3 (Table 1).

> inmates Jacques, Serrano Ayuso, and Feliz punched and kicked inmate Johnson, while asleep in his bunk. All three inmates used their hands and feet to strike and kick Johnson, causing physical injuries to his face, head, back, and arms. The reason for the assault[] was over a disrespect issue between Johnson and Jacques. Jacques accused Johnson of "snitching," when he out on WRIT. Jacques told Johnson to check himself into SHU by morning. There is no solid evidence, inmate Escobar, Alexis, Reg. No. 85767-053, was involved in the assault, but he was in the area as a possible lookout. This conclusion is based on Johnson's statement and positive identification of the inmates who assaulted him via TRUSCOPE (photographs); witness (Sweitzer, Zachary, Reg. No. 89152-083) statement, who stated he witnessed the assault, and was also able to identify two of the three assailants; staff memorandums; photographs; and medical assessments. There is no video footage of the assault, due to lack of cameras in the unit.

(*Id*.)

The next day, on May 22, 2019, staff delivered a copy of the incident report to Petitioner and advised him of his rights. (*Id*. at ¶¶ 15–16.)  Petitioner stated that he understood his rights and denied that he was involved in the incident. (*Id*. at ¶¶ 23–24.)  At the end of the investigation, the investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing.

On May 23, 2019, the UDC held an initial hearing where Petitioner argued that he "was not involved in any altercation or incident." (*Id*. at ¶ 17.)  After the hearing, the UDC referred the incident report to a Discipline Hearing Officer ("DHO"), due to the seriousness of the offense.

Officials advised Petitioner of his rights before the DHO, and he acknowledged receipt of those rights. (ECF No. 6-3, at 17, 19.)  Petitioner requested a staff representative and stated that he wished to call two inmate witnesses to testify at the hearing. (*Id*. at 19.)

The DHO held a hearing on July 2, 2019, and Petitioner appeared with a staff representative.  Petitioner disputed the contents of the incident report.  He acknowledged that he

had an argument with the victim before the incident and knew of the assault, but that he "never touched" the victim. (*Id*. at 23.)

Petitioner's first witness, inmate Regis, testified that he and Petitioner were at commissary from approximately 6:14 a.m. to 8:00 a.m., during the time of the assault. (*Id*.)  Petitioner's second witness, inmate Soto, was unavailable as the BOP had transferred him to a different facility. (*Id*.)

Petitioner's staff representative presented statements from the victim, inmate Johnson, and the witness, inmate Sweitzer, in which they recanted their initial statements identifying Petitioner as one of the assailants. (*Id*. at 24.)  The DHO investigated these recanting statements and inmates Johnson and Sweitzer  advised that "they were coerced" by the assailants into making the recanting statements.  (*Id*. at 24, 58–61.)  Moreover, the DHO compared the handwriting between the recanting and initial statements and found that they were "clearly not written by the victim and the witness." (*Id*. at 24.)  As a result, the DHO found that the recanting statements were not credible. (*Id*.)

In total, the DHO considered Petitioner's statement, inmate Regis' statement, the incident report, the Special Investigative Services ("SIS") investigation report, the injury assessment reports, a copy of the quarter's assignment, staff memorandums, an email from staff, photographic evidence, Petitioner and inmate Regis' commissary receipts, inmates Johnson and Sweitzer's initial statements, their recanting statements, the SIS interviews with inmates Johnson and Sweitzer, and inmates Johnson and Sweitzer's disavowals of their recanting statements. (ECF No. 6-3, at 24.)

After considering all of the evidence, the DHO concluded that Petitioner committed the prohibited act of abetting an assault, in violation of BOP Code 224A,[3] rather than directly assaulting the victim. (*Id.* at 24–25.)  The DHO found as follows:

> The DHO found that you committed the act of Assaulting any person, Code 224A. In finding you committed this prohibited act, the DHO relied upon the reporting officer' s statement that on May 21, 2019, at approximately 3:30 p.m., the SIS completed an investigation which revealed that there is sufficient evidence to indicate that inmate Serrano #15488-049, you, and Feliz #15839-049 assaulted inmate Johnson #29746-280 on April 24, 2019 at approximately 7: 40 a.m. in unit G-A. Specifically, inmate Serrano, Feliz, and you punched and kicked Johnson, causing physical injuries to his face, head, back, and arms. The reason for the assault was over a disrespect issue between Johnson and you. You accused Johnson of "snitching," when he was out on WRIT. You told Johnson to check himself into SHU by morning. This conclusion is based on inmate Johnson's statement and positive identification of the inmates who assaulted him via TRUSCOPE (photographs); witness statement who stated that he witnessed the assault and was also able to identify the three assailants; staff memorandums, photographs, and medical assessments. There is no video footage of the assault due to lack of cameras in the housing unit.
>
> The DHO found that you committed the prohibited act of Assaulting any person, Code 224A. The DHO took your testimony and supporting evidence into consideration. Your staff representative provided written statements from the witness and the victim stating that they were recanting statements to the SIS during the investigation. A follow up interview by the SIS with the victim and the witness indicated in their written statement to the SIS that they were coerced to make the recanting statements. Those recanted statements were to be provided to the staff representative as exculpatory evidence to be presented to the DHO. Handwriting comparisons between the recanted statements and the written statement to the SIS is clearly not written by the victim and the witness. The DHO finds that the recanted statements not to be credible.

---

[3] Adding an "A" to a BOP Code appears to designate the charge as involving the "[a]iding, attempting, abetting, or making plans to commit . . . the prohibited act[]," which "is treated the same as committing the act itself." 28 C.F.R. § 541.3(a).

The DHO reviewed the injury assessment report concerning the injuries that inmate Johnson received and are found to be consistent with being assaulted. The SIS report indicates that the victim and the witness both identified you at the scene of the incident actively involved in the assault. The victim also confirmed the identity of you, Feliz, and Serrano as the assailants in the assault.

Photographic evidence depicts the injuries that inmate Johnson received and documented in the injury assessment report.  Staff memorandums indicate[] that the victim approached the housing unit officer and told staff that he was injured.  The approximate time of the incident is listed as 7:40 a.m. on the incident report.  You indicated that you were at the commissary at that time.  There is sufficient time between the time your commissary receipt shows you were at the commissary at approximately the same time that the assault occurred.

The DHO has concluded that you were at least knowledgeable that an assault on inmate Johnson was imminent based upon your statement to the DHO. You indicated during the hearing that Johnson owed you a debt, which led to the argument that you and Johnson had. The DHO also concludes that you were abetting in the assault with the other two perpetrators, Feliz, and Serrano. The victim's witness indicated that you, specifically were seen participating in the assault of inmate Johnson in the housing unit. Your witness statement, that of the victim, and the eyewitness, conflict. Your witness indicated that you and he were at the commissary from approximately 6:14 a.m. until 8:00 a.m. The victim's statement and the eyewitness to the incident places you at the scene of the incident. The DHO finds your witness testimony to be unreasonable and your witness to be not credible.

Based upon the totality of the investigation, the facts in the body of the report, and your acknowledgement of knowing about the incident, the DHO finds that the greater weight of the evidence is based upon these facts presented during the DHO hearing and what has been recorded in the investigation. The DHO bas[es] his decision on the body of the incident report, [t]he SIS investigation and follow-up interview with the victim and witness, the injury assessment report of inmate Johnson, and the witnesses own account of the incident. The DHO has found that you committed the prohibited act of 224A, Assaulting any person, (Abetting).

(*Id.*)  The DHO then issued the following sanctions: (1) revocation of twenty-seven days of good conduct time; (2) thirty days of disciplinary segregation; and (3) loss of phone privileges for ninety days.  Petitioner received the finalized DHO report on July 3, 2019.

Petitioner appealed the DHO's decision to the BOP's Regional and Central Offices, raising a challenge to the sufficiency of the evidence and other due process arguments. (ECF No. 6-3, at 7–12.)  Petitioner received a denial at each level of appeal. (*Id.*)

In February of 2020, Petitioner filed the instant Petition, arguing that his DHO hearing violated his due process rights.  Respondent filed an Answer (ECF No. 6), and Petitioner filed a Reply, (ECF No. 7).  In terms of relief, Petitioner seeks, among other things, the restoration of his good conduct time. (ECF No. 1, at 8.)

## II.    STANDARD OF REVIEW & JURISDICTION

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)).  "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

Where a petitioner fails to identify evidence outside the record that would support or "otherwise . . . explain how . . . an evidentiary hearing" would advance his claim, a court is within its discretion to deny an evidentiary hearing. *Campbell*, 209 F.3d at 287.   In exercising that discretion, a court must accept the truth of a petitioner's factual allegations unless the record shows that they are clearly frivolous. *Friedland*, 879 F. Supp. at 434; *c.f. United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).   The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time" he files his petition. *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989)).

This Court has subject matter jurisdiction under § 2241 to consider the Petition because Petitioner challenges the loss of good conduct time on constitutional grounds, and he was incarcerated in New Jersey at the time he filed the Petition. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242–44 (3d Cir. 2005).

### III.   DISCUSSION

Petitioner argues that the BOP violated his due process rights because: (1) he did not receive proper notice of the charge against him; (2) the DHO "excluded" exculpatory evidence and failed to call one of Petitioner's witnesses; and (3) that the DHO was not impartial.  (ECF No. 1, at 6–7.)  Petitioner also alleges that he is "actually innocent" and appears to challenge the sufficiency of the evidence against him. (*Id*. at 8.)  In response, Respondent contends that Petitioner received all the necessary due process protections, and that in any event, there is "some evidence" to support the DHO's findings and decision.

Under our jurisprudence, before a prisoner may lose good time credits, officials must afford him the following due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. *See Crosby v. Piazza*, 465 F. App'x 168, 171–72 (3d Cir. 2012) (per curiam) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–71 (1974)).

Additionally, in order to comport with due process, there must be "some evidence in the record" to support a disciplinary officer's findings and decision to revoke good time credits. *Gonzalez v. Hollingsworth*, No. 15-2993, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) (quoting *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013)). The "some evidence" standard is one of appellate review and is not the same as the "burden of proof in a prison disciplinary proceeding." *Id*.

Indeed, the "some evidence" standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence in the record that could support'" the disciplinary official's conclusion. *Id*. (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)).

**A. The Right to Written Notice**

With the principles above in mind, Petitioner first contends that he did not receive proper written notice of the charges against him. (ECF No. 1, at 6–7.) More specifically, he argues that the BOP violated due process by charging him only with BOP Code 224, Assaulting any person,

but found that he committed a different offense, a violation of BOP Code 224A, Assaulting any person, (Abetting).

Courts within the Third Circuit have rejected Petitioner's argument "that procedural due process is violated whenever the DHO finds an inmate guilty of an act that the inmate was not originally charged with."  *King v. Ebbert*, No. 15-01937, 2016 WL 7365211, at *15 (M.D. Pa. Nov. 28, 2016) (collecting cases); *see also Guerrero v. Recktenwald*, 542 F. App'x. 161, 164 (3d Cir. 2013); *Lee v. Bradley*, No. 21-1502, 2021 WL 5112271, at *4 (M.D. Pa. Nov. 3, 2021); *Milhouse v. Ebbert*, No. 15-13, 2016 WL 4448637, at *3 n.4 (M.D. Pa. Aug. 24, 2016).

In *Guerrero*, the Third Circuit addressed a case in which a prisoner "was initially charged with only the higher offense of engaging in a group demonstration," and argued that "he did not have proper notice to defend against the lesser charge of insolence." *Guerrero*, 542 F. App'x at 164.  The Court rejected that argument, finding that although the notice of disciplinary hearing did not explicitly charge Mr. Guerrero with insolence, it was "of no consequence[,] because pursuant to 28 C.F.R. § 541.8(a)(1), a DHO has the authority to find that an inmate 'committed the prohibited act(s) charged, *and/or a similar prohibited act(s) as described in the incident report*.'" *Id*. (emphasis added) (quoting 28 C.F.R. § 541.8(a)(1)); *see also Lee*, 2021 WL 5112271, at *4; *Thornton v. Thomas*, No. 12-1264, 2013 WL 6858741, at *5 (M.D. Pa. Dec. 30, 2013).

"Importantly, however, in order for a DHO to constitutionally change, or amend, a misconduct charge, . . . without the need to provide additional advance-written notice, the factual nature of the alleged prohibited conduct must remain the same." *Sanders v. Zickefoose*, No. 13-1595, 2015 WL 4729831, at *8 (M.D. Pa. Aug. 10, 2015) (citing *Northern v. Hanks*, 326 F.3d 909, 910–11 (7th Cir. 2003) (holding that the notice and report gave the petitioner all the information that he would need to defend against the amended, or modified disciplinary charge)); *see also*

*King*, 2016 WL 7365211, at *15; *Jennings v. Hollingsworth*, No. 14-6881, 2016 WL 880501, at *7 (D.N.J. Mar. 8, 2016).

In the present case, the Court finds that the factual nature of the alleged prohibited conduct remained the same and that the incident report possessed all the information necessary for Petitioner to defend against either charge. *Cf. Sanders*, 2015 WL 4729831, at *9.  The "two charges [were] sufficiently related such that, when [Petitioner] was provided with a copy of the incident report, he had all the relevant facts presented to him to marshal . . . his defense on either charge." *Id*.

For example, the incident report identified his alleged co-defendants, the details of their assault, Petitioner's reason for causing the assault, the identity of the victim and witness, the time of the assault, and that the victim and witness identified Petitioner as an assailant. (ECF No. 6-3, at 14.)  These details would be sufficient if Petitioner were defending against a direct assault charge or an abetting assault charge, *i.e.*, that he assisted or encouraged someone to commit an assault.

Additionally, Petitioner does not allege how his strategy would have differed between defending against the two charges, nor does he allege that he would have presented different evidence. *Sanders*, 2015 WL 4729831, at *9 ("Sanders does not mention how his strategy . . . would have changed . . . at a new hearing.  Similarly, Sanders does not cite to any new evidence that he would have presented, but did not present, or did not previously request to present, at the initial hearing."); *King*, 2016 WL 7365211, at *16 (citing *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1422 (M.D. Pa. 1994)) (hesitating to order a new hearing without some explanation as to how petitioner "was prejudiced by the DHO's determination that King committed a similar prohibited act to the one initially charged").

For all those reasons, the Court finds that the BOP provided Petitioner with sufficient notice of the charge against him to satisfy due process.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Exculpatory Evidence Claims

Next, Petitioner contends that the DHO "excluded exculpatory evidence." (ECF No. 1, at 7.)  Petitioner appears to argue that the DHO "excluded" a staff memo, documentary evidence in the form of commissary receipts and recanting statements, and the potential testimony of one of Petitioner's witnesses.  The Court will construe this claim as alleging that the DHO violated his due process right under *Wolff* to present evidence and call witnesses in his defense.

### 1.   The Right to Present Evidence

In this context, the right to present evidence is not absolute.  "Prison officials may limit the inmate's presentation for reasons of relevance, necessity, or undue hazard to institutional safety or correctional goals."  *Bellamy v. Hollingsworth*, No. 13-7783, 2014 WL 714905, at *4 n.7 (D.N.J. Feb. 21, 2014) (citing *Wolff*, 418 U.S. at 566–67).  Prison officials must justify their refusal, but it is not necessary to do so at the time of the hearing. *Id*.  To the contrary, officials may provide their explanation for the refusal to the court, if a petitioner later raises a due process challenge. *Id*. (citing *Ponte v. Real*, 471 U.S. 491 (1985)).

"Moreover, in this context, an inmate who challenges a . . . hearing result based upon an alleged denial of his right to present evidence must show some actual prejudice resulting from the prison's exercise of discretion." *See, e.g.*, *Moreta v. Marionna*, No. 15-1915, 2017 WL 2463087, at *4 (M.D. Pa. June 7, 2017) (citing *Pachtinger v. Grondolsky*, 340 F. App'x 772, 777 (3d Cir. 2009)).

With those principles in mind, Petitioner appears to argue that the DHO "excluded" a staff memo and documentary evidence in the form of commissary receipts and recanting statements.  In the staff memo at issue, (ECF No. 6-3, at 36), Petitioner alleges that Officer Guinn identified the correct time of the assault, between 7:14 a.m. and 7:25 a.m.  (ECF No. 1-2, at ¶ 9.)  Consequently, Petitioner argues that he could not have taken part in the assault because his receipts and other evidence show that he was at commissary during that time. (*Id*.)

As to the other documentary evidence, Petitioner appears to allege that the DHO "excluded" the recanting statements of the victim, inmate Johnson, and the witness, inmate Sweitzer. (ECF No. 7, at 4.)  In the recanting statements, they recanted their initial statements identifying Petitioner as one of the assailants. (ECF No. 6-3, at 56–57.)  Petitioner may also be alleging that the DHO "excluded" photographic evidence of Petitioner's body after the attack, which showed "that no marks or bruises [were] found on [his] face, body and hands." (ECF No. 1-2, at ¶ 2.)  Finally, Petitioner appears to argue that the DHO should have considered any video footage of the assault. (ECF No. 1, at 10.)

The flaw in Petitioner's arguments is that the DHO did not "exclude" any of the evidence discussed above.  As stated in the DHO report and the attached documents, the DHO considered Officer Guinn's memo, the victim and witness' recanted statements, the commissary receipts, the photographic evidence, and that there was "no video footage due to lack of cameras in the housing unit." (ECF No. 6-3, at 24–61.)  As a result, Petitioner's disciplinary hearing complied with *Wolff* and satisfied Petitioner's right to present evidence in his defense.

Rather, in using the term "exclude," Petitioner is arguing that the DHO should have assigned more weight to Petitioner's evidence and should have accepted Petitioner's version of the events.  It is not, however, the duty of this Court to assess whether the DHO properly weighed the

evidence.  When reviewing a DHO decision resulting in the loss of good time credits, federal courts do not weigh the evidence or assess credibility.  *See Lang*, 529 F. App'x at 123.  For the purposes of due process, it was sufficient that the BOP allowed Petitioner to present the evidence in dispute and that the DHO considered that evidence.  *See id*.  The DHO had the right to assign little or no weight to Petitioner's evidence and had the right to decide which statements he believed were credible.  Accordingly, Petitioner is not entitled to habeas relief on this ground.

### 2.  The Right to Call Witnesses

Returning then to Petitioner's second proposed witness, inmate Soto, Petitioner contends that inmate Soto had exculpatory conversations with inmate Sweitzer, the witness who identified Petitioner as an assailant.  In particular, inmate Sweitzer allegedly said that he was not at the scene of the assault, had no true knowledge of the events, and falsely testified against Petitioner to support a transfer to a different facility. (ECF No. 1-2, at 2.)  Petitioner argues that the DHO violated his due process rights by refusing to call inmate Soto or obtain a written statement from him. (ECF No. 1, at 7.)

In the context of disciplinary hearings, prisoners do not have an "unqualified right to call witnesses." *Kenney v. Lewisburg*, 640 F. App'x 136, 139 (3d Cir. 2016) (citing *Wolff*, 418 U.S. at 566.)  Rather, prisoners have a limited right to call witnesses with relevant information if they would not present a threat to penological interests. *Levi v. Holt*, 193 F. App'x 172, 175 (3d Cir. 2006) (citing 28 C.F.R. § 542.17(c); *Wolff*, 418 U.S. at 566–67).

The Code of Federal Regulations clarifies that witnesses may appear at a DHO hearing as follows:

> (1) Witnesses may appear before the DHO either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.

(2) The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available. However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials.

(3) You or your staff representative may request witnesses appear at the hearing to testify on your behalf. Your requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence.

(4) If your requested witnesses are unavailable to appear, written statements can be requested by either the DHO or staff representative. The written statements can then be considered during the DHO's hearing.

28 C.F.R. § 541.8(f)(1)–(4).  As a result, a DHO has the discretion to decline to call a witness if that witness is not "reasonably available."  *Pappas v. Allenwood*, 548 F. App'x 31, 33–34 (3d Cir. 2013) (quoting 28 C.F.R. § 541.8(f)(3)–(4)).

Among other scenarios, the Third Circuit has held that an inmate witness is not "reasonably available," if they have been released. (*Id.* at 33.)  Courts have also upheld DHO decisions concluding that a witness was not "reasonably available" if the BOP transferred the witness to a different facility. *Parnell v. Ortiz*, No. 18-16680, 2020 WL 525865, at *5 (D.N.J. Jan. 31, 2020); *cf. Stone v. Rickard*, No. 16-10763, 2017 WL 9939206, at *5 (S.D.W. Va. Aug. 28, 2017) (addressing the transfer of a BOP employee witness); *Moles v. Holt*, No. 06-0665, 2006 WL 2794220, at *4 (M.D. Pa. Sept. 27, 2006), *aff'd*, 221 F. App'x 92 (3d Cir. 2007) (same).

In this case, the DHO concluded that inmate Soto was not reasonably available because the BOP transferred him to a different facility. (ECF No. 6-3, at 23.)  Although inmate Soto "remained in BOP custody and was potentially available via telephone or videoconferencing, it was within the [DHO's] discretion to determine" that inmate Soto was not "reasonably available under the

14

circumstances." *Parnell*, 2020 WL 525865, at *5 (citing *Wolff*, 418 U.S. at 566–67 ("The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials . . . are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion . . . .")).

Alternatively, Petitioner argues that the DHO violated due process by failing to obtain a written statement from inmate Soto. (ECF No. 1, at 7.) As mentioned above, 28 C.F.R. § 541.8(f)(4) provides a DHO with the option, *but does not require*, the DHO to obtain a written statement from an unavailable witness. Additionally, that regulation also allowed Petitioner's staff representative to request a written statement from inmate Soto. 28 C.F.R. § 541.8(f)(4). Petitioner fails to explain why he did not ask his staff representative to obtain such a statement or request a postponement of the hearing to obtain that statement. (*See generally* ECF No. 1.)

For all those reasons, the DHO did not abuse his discretion in concluding that inmate Soto was not reasonably available, and our jurisprudence did not require the DHO to obtain a written statement from inmate Soto. Accordingly, the DHO did not violate Petitioner's limited due process right to call witnesses under *Wolff*, and Petitioner is not entitled to habeas relief on these claims.

### C. The Right to an Impartial Decision-Maker

Next, Petitioner argues that the DHO "was not impartial." (ECF No. 1, at 7.) Petitioner appears to allege that the DHO's fact finding decisions show that the DHO was biased. (*Id*. at 7, 11). Additionally, Petitioner again accuses the DHO of "excluding" evidence. (*Id*.)

In the prison disciplinary hearing context, the Third Circuit has held that the "requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in

the circumstances underlying the charge." *Speight v. Minor*, 245 F. App'x 213, 217 (3d Cir. 2007) (internal quotation marks omitted).  In the absence of a showing that the DHO was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," courts have generally rejected due process challenges based on claims of DHO bias. *See, e.g.*, *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008); *Edwards v. Yates*, No. 15-5780, 2016 WL 6562048, at *9 (D.N.J. Nov. 4, 2016).

With those principles in mind, Petitioner's "claim of general of bias" does not amount to "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge," that could show that the DHO was not impartial. *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (internal quotation marks omitted); *Rodriguez v. Ebbert*, No. 15-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) (finding that a "'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation").

 Petitioner's "evidence" in support of this claim are merely his disagreements and displeasure with the DHO's reasoning and decisions. (ECF No. 1, at 7, 11.)  With regard to Petitioner's allegation that the DHO "excluded" evidence, as discussed above, the DHO did not "exclude" any of the evidence in question.  Rather, the DHO considered Petitioner's evidence and did not assign it as much weight as Petitioner believed was appropriate. (ECF No. 6-3, at 24–61.) Accordingly, Petitioner has failed to demonstrate that the DHO was not impartial, and Petitioner is not entitled to habeas relief on this claim.

### D. Sufficiency of the Evidence and Actual Innocence

Finally, Petitioner contends that he is "actually innocent" of abetting an assault under BOP Code 244A.  (ECF No. 1, at 8.)  In essence, Petitioner argues that the DHO should have accorded

more weight to Petitioner's evidence and that the DHO should have believed Petitioner's version of the events.  Ultimately, Petitioner asks this Court to reweigh the evidence, but that is not the duty of this Court.

When reviewing a DHO's decision resulting in the loss of good time credits, federal courts will uphold that decision as long as there was "some evidence" to support the DHO's findings and decision. *Hill*, 472 U.S. at 455–56.  As mentioned above, the "some evidence" standard is one of appellate review and it is not the same as the "burden of proof in a prison disciplinary proceeding." *Gonzalez*, 2016 WL 1732376, at *2 (quoting *Denny*, 708 F.3d at 144).

The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang*, 529 F. App'x at 123 (citing *Thompson*, 889 F.2d at 502).  Instead, district courts need only ask whether "there is any evidence in the record that could support" the disciplinary official's conclusion. *Id.* (quoting *Hill*, 472 U.S. at 455–56) (internal quotation marks omitted).

With that minimal standard in mind, there is plainly "some evidence" to support the DHO's findings and decision in this case.  The initial victim and witness statements alone are sufficient to meet the "some evidence" standard.  The statement of the victim, inmate Johnson, states that he and Petitioner had an argument because Petitioner accused him of being a "snitch" while inmate Johnson was out on writ.  (ECF No. 6-3, at 30.)  Petitioner then threatened inmate Johnson, warning him that he should go to the special housing unit, implying that inmate Johnson would be attacked if he stayed in general housing. (*Id.*)  When three individuals attacked inmate Johnson, he was able to identify the  three assailants, one of which was Petitioner. (*Id.*)

As for the witness, inmate Sweitzer, he stated that he walked by and noticed three individuals, including Petitioner, stomping on inmate Johnson. (*Id.* at 31.)  Inmate Sweitzer

corroborated the notion that inmate Johnson had snitched and "also heard that [Petitioner] asked the Mexicans for permission to hit [inmate Johnson,] and they gave the go ahead." (*Id*. at 31.)

These statements show that the DHO had "some evidence" to conclude that Petitioner, at the very least, abetted, *i.e.*, encouraged or assisted, in the assault against inmate Johnson.  Even if Petitioner did not personally strike inmate Johnson,  the DHO could have concluded that Petitioner encouraged or assisted in the assault, as he had a motive for the assault, threatened inmate Johnson, and was in the immediate vicinity of two people attacking inmate Johnson.  Similarly, the DHO could have concluded that Petitioner assisted in the assault, by "ask[ing] the Mexicans for permission" to attack inmate Johnson. (*Id*. at 31.)

In his Reply, Petitioner emphasizes that inmates Johnson and Sweitzer later recanted these initial statements. (ECF No. 7, at 4.)  Petitioner appears to argue that the DHO should not have investigated the recanting statements and should have believed them without question. (*Id*.)  The DHO, however, had the right to assign little or no weight to the recanting statements.  That said, the DHO's investigation revealed that Petitioner and his co-defendants intimidated inmates Johnson and Sweitzer into submitting the recanting statements. (ECF No. 6-3, at 58–61).

Consequently, the DHO was free to conclude that the initial statements were credible, and that the recanting statements were not credible.  In any event, these arguments address the weight of the evidence and do not change the conclusion that there was "some evidence" to support the DHO's findings and decision.  Accordingly, Petitioner is not entitled to habeas relief on this ground.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny the Petition.  Additionally, the Court will

deny Petitioner's requests for discovery as moot. (ECF No. 1-4.)  An appropriate Order follows.


DATED:  February 4, 2022

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**
